W. F. DAVIS ET AL. (HOWARD BLAND, SR., ET AL.) V. CITY OF TAYLOR ET AL.

No. 6005.   Decided January 24, 1934.
(67 S. W., 2d Series, 1033.)

*Allen & Wofford,* of Taylor, for plaintiffs in error.

A municipal corporation has no power to do indirectly what it cannot do directly; it cannot contribute tax money to the

support of a private association, and it cannot by incorporating such private association into a part of the city government, but without governmental or municipal functions, contribute tax money to its support. Constitution of Texas, Art. 3, sec. 52; Art. 8, sec. 3; Art. 11, sec. 3; Citizens Saving & Loan Assn. v. Topeka, 20 Wall. (U. S.) 655; Jones v. City of Portland, 245 U. S. 217; Waples v. Marrast, 108 Texas, 5, 184 S. W. 182.

Every municipal corporation is limited by the Constitution of this State and cannot levy taxes except for a public or municipal purpose, and it must clearly appear that the purpose is public or municipal, and if there is any doubt about the purpose being public or municipal, such doubt will be resolved against the power. City of Denton v. Denton Home Ice Co., 119 Texas, 193, 27 S. W. (2d) 119; Arlington v. Lillard, 116 Texas, 446, 294 S. W., 829.

*Solon I. Reinhardt* and *Harris A. Melasky,* of Taylor, for appellees.

A city or town incorporated under the Home Rule Amendment to the Constitution of the State of Texas does not have to look to the Legislature for grant of power to act but may do anything in the exercise of its power for the administration of municipal affairs for the public good which is not inhibited by the Constitution of the State of Texas or the general laws enacted by the Legislature. Constitution, Art. 11, sec. 5; R. S., 1925, Arts. 1011, 1175, and 1176; Xydias Amusement Co. v. City of Houston, 185 S. W., 415; Keil v. Pulte, 10 S. W. (2d) 695; Cameron v. City of Waco, 8 S. W. (2d) 249.

That which is or is not a public purpose is primarily a question for the law-making body and the court should not and cannot determine to the contrary except in an instance where the legislative determination of the question is palpably and manifestly arbitrary and incorrect. Lytle v. Halff, 75 Texas, 128, 12 S. W. 610; Brown v. City of Galveston, 97 Texas, 1, 75 S. W., 488; Goodnight v. City of Wellington, 118 Texas, 207, 13 S. W. (2d) 353; McQuillan Mun. Corp., vol. 2, p. 1527, sec. 703.

MR. JUSTICE PIERSON delivered the opinion of the court.

Plaintiffs in error, as tax-paying citizens of the City of Taylor, brought this suit in the District Court of Williamson County against the City of Taylor and its officials, and sought to enjoin the latter from spending the funds of the City and from levying and collecting a tax authorized by the city charter and ordinances of said City, as disclosed by the charter amend-

ment and ordinances set out below.

On January 8, 1929, the City of Taylor, which is a home rule city, adopted by a majority vote of its citizens an amendment to its charter, which reads as follows:

"The City Commission shall annually appropriate moneys from the general fund of the City to the aggregate amount of not more than Two (2) mills on each One Dollar valuation of the taxable property within the City in any one year for the following purposes:

"1. The establishment and maintenance of a Board of City Development, Chamber of Commerce, or other similar organization under whatsoever name, devoted to the growth, advertisement, development, improvement and increase of the taxable values of said city.

"The Board of City Development or other similar organization herein provided for shall consists of not less than fifteen (15) members to be appointed by the Chairman of the Board of Commissioners with the advice and consent of the City Commission who shall hold office for two years from the date their appointment is confirmed by the City Commission and until their successors are appointed and confirmed. Provided, however, the first board appointed by the City Commission shall be the Board of Directors of the present Chamber of Commerce of the City of Taylor, who are in office at the time the City Commission makes such appointment under this provision, seven of whom shall be appointed for one year and eight for two years, and thereafter the City Commission shall appoint seven one year and eight the next to serve for a term of two years; and they shall be appointed from a list of persons, equal to twice the number to be selected, nominated by the then existing Board of City Development or other similar organization.

"The amount of money so appropriated each year by the City Commission shall be paid to the Board of City Development in twelve equal monthly installments."

On February 15, 1929, an ordinance was duly passed in substantial compliance with said amendment to the charter, and the purpose clause thereof reads as follows:

"That there is hereby created and established the Board of City Development of the City of Taylor, Texas, whose duties and purposes shall be devoted to the growth, advertisement, development, improvement and increase of the taxable values of said city."

The ordinance appropriated $7,000.00 of the general fund of the City for the first year to be paid to the Board of City

Development in ten equal installments, to be used in carrying on the work for which the Board was created. Later a tax was levied as authorized by the charter amendment.

The plaintiffs in error in this suit sought to enjoin the levying and collecting of the aforesaid tax, and also to enjoin the further appropriation and payment of any of the funds of the City to said Board of City Development for the purposes stated in the charter amendment and ordinances above referred to. The District Court denied the relief sought, and its judgment was affirmed by the Court of Civil Appeals. See opinion of the Court of Civil Appeals, 37 S. W. (2d) 291. Writ of error was granted by this Court because of the importance of the question.

Plaintiffs in error challenge the right of the City of Taylor to authorize by its charter the creation of the Board of City Development and the appropriation of the City's funds for the purposes stated in the charter and ordinance.

■ A municipal corporation may exercise such powers, and only such powers, as are expressly granted to it in its charter, or such implied powers as are incident to the powers granted, or those essential and necessary to make effective the objects and purposes of the corporation. Dillon, Municipal Corporations (5th ed.), Vol. 1, sec. 237; 28 Cyc., page 1533; 19 Ruling Case Law, page 768, sec. 75; City of Brenham v. Brenham Water Co., 67 Texas, 542; Foster v. City of Waco, 113 Texas, at page 355. Other authorities could be readily cited, but this principle is so well established that further citations are not necessary.

■ It is equally well settled that if a power is granted to a city, the exercise thereof is within the discretion of the city, and partakes of a legislative nature. A court will not regulate the exercise of a power expressly granted, unless it is exercised in such a way as to be clearly abusive of the power and an evasion thereof. This rule is expressed as follows in 19 Ruling Case Law, at page 770:

"When, however, power over a particular subject matter has been delegated to a municipal corporation by the legislature without any express limitations, the extent to which that power shall be exercised rests in the discretion of the municipal authorities, and as long as it is exercised in good faith and for a municipal purpose, the courts have no ground upon which to interfere.

And in Cyc., page 1533:

"But the courts cannot generally determine what municipal expenditures are necessary; if a given expenditure is within

charter authorization, and therefore, abstractly considered, a legitimate municipal charge, the courts cannot pass upon the advisability or wisdom of its being incurred. That is a matter within the discretion of the municipal authorities, except, it may be, that abuse of the discretion would be controlled, or, if bad faith attended its exercise, the courts would intervene."

■ A city which operates under the Home Rule Amendment is empowered to adopt or amend its charter in any manner which it may desire, consistent and in accord with the Constitution and general laws of this State.

Article VIII, Section 3, of the Constitution provides:

"Taxes shall be levied and collected by general laws and for public purposes only."

■ It is well settled that municipal corporations cannot impose taxes for other than public purposes.

The amendment to the charter of the City of Taylor set aside certain funds to be devoted to "the growth, advertisement, development, improvement and increase of the taxable values of said city."

In discussing what is a public purpose, McQuillin on Municipay Corporations (2 ed.), Vol. 6, page 292, sec. 2532, says:

"What is a public purpose cannot be answered by any precise definition further than to state that if an object is beneficial to the inhabitants and directly connected with the local government it will be considered a public purpose."

The Supreme Court of Illinois, in Taylor v. Thompson, 42 Ill., 9, defines a "tax for corporate purposes" as follows:

"We may define this phrase to mean, a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it."

It would not be of value now to attempt to thoroughly define or discuss what are public purposes. No exact definition can be made. Suffice it to say that unless a court can say that the purposes for which public funds are expended are clearly not public purposes, it would not be justified in holding invalid a legislative Act or provision in a city charter providing funds for such purposes.

Cooley's Constitutional Limitations (5th ed.), page 155, says:

"But what is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion which cannot be controlled by the courts, except, perhaps,

where its action is clearly evasive, and where, under pretence of a lawful authority, it has assumed to exercise one that is unlawful. Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the constitution imposes; not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives."

The principal contention in this suit is that it is not a public purpose and not a municipal purpose for the city to spend its funds for advertising the advantages of the city.

■ It has generally been held that appropriations for exhibitions of the resources of a particular locality at State or National expositions are not subject to the objection that they are not made for a public purpose. The Supreme Court of California, in the case of Daggett v. Colgan, 92 Cal., 53, 28 Pac., 51, 14 L. R. A., 474, held that an appropriation for the purpose of "erecting buildings and collecting and maintaining an exhibit of the products of the State" at the World's Fair, Columbian Exposition at Chicago in 1893, was not unconstitutional on the ground that it was not for a public use. The Kentucky Court of Appeals, in the case of Norman v. Kentucky Board of Managers, 93 Ky., 537, 18 L. R. A., 556, held that an appropriation to exhibit the resources of that State at the same Columbian Exposition was for a public or governmental purpose. The Supreme Court of Tennessee, in the case of Shelby County v. Tennessee Centennial Exposition Company, 96 Tenn., 653, 33 L. R. A., 717, held that an exhibition of the resources of a county at a state centennial exposition is a county purpose within the meaning of a constitutional provision authorizing taxation for county purposes. In this last case there was an express grant of power by the General Assembly to levy such a tax. We can see no material difference in the ultimate purpose of an exhibit of the resources of a particular locality at an exposition and the more modern method of presenting the advantages and opportunities of a city, county, or state, through newspaper or magazine advertising, and similar channels.

In the recent case of Sacramento Chamber of Commerce v. Stephens, 212 Cal., 607, 299 Pac., 728, the Supreme Court of California upheld a contract of the .City of Sacramento which provided for the general advertising of the city. The charter of the City of Sacramento specifically provided for the appropriation of the funds of the city for such purposes. In the

course of the opinion Chief Justice Waste uses the following language:

"In answer to the contention that the contract between the city and the Chamber of Commerce does not relate to a public purpose, little need be said. In considering a somewhat similar question which arose out of a demand on the state controller to pay a claim contracted and audited by the California World's Fair Commission in connection with the construction of buildings and the maintenance of an exhibit of the products of the state of California at the World's Fair Columbian Exposition held in the city of Chicago, state of Illinois, in 1893, this court said, in Daggett v. Colgan, 92 Cal., 53, 57, 28 P., 51, 52, 14 L. R. A., 474, 27 Am. St. Rep., 95, 'that what is for the public good and what are public purposes "are questions which the legislature must decide upon its own judgment, in respect to which it is vested with a large discretion which cannot be controlled by the courts, except, perhaps, where its action is clearly evasive. * * * Where the power which is exercised is legislative in its character the courts can enforce only those limitations which the constitution imposes; not those implied restrictions, which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives." Cooley's, Const. Lim., p. 154.'

"Furthermore, we are of the view that, by common consent, it is now generally held to be well within a public purpose for any given locality to expend public funds, within due limitations, for advertising and otherwise calling attention to its natural advantages, its resources, its enterprises, and its adaptability for industrial sites, with the object of increasing its trade and commerce and of encouraging people to settle in that particular community." 212 Cal., 607, 299 Pac., 730.

McQuillin, in his 1932 Cumulative Supplement to his work on Municipal Corporations, at pages 662, 663, says:

"Although recent decisions declare advertising is a public purpose for which the taxing power may be exercised, to authorize the levy of any tax for this purpose or appropriate public money therefor, express grant must exist, either statutory or in home rule charters."

We have been unable to find any case in the reports in which there was an express grant of power for the purpose of advertising, that the court has not upheld the power of the city to appropriate the money therefor and levy a tax to defray the expense.

In this case express authority in the home rule charter does exist, and its exercise is not a violation of any provision

of the Constitution or the general laws of the State, and can reasonably be included in the general powers and purposes of the municipal government.

We resolve the other questions raised by plaintiffs in error against them. We do not deem an extended discussion necessary, but, in addition to what we have said, we make reference to the opinion of the Honorable Court of Civil Appeals, 37 S. W. (2d) 291.

If it be granted that some of the uses to which some of the money appropriated to the Board of City Development has been put are not municipal in character, and not authorized, yet that would not affect the validity of the appropriation and the use of funds for legitimate municipal purposes. Plaintiffs in error are not seeking to enjoin separately the misuse of funds for such particular purposes that are not municipal in character. Their assertion is that none of the purposes included in the charter amendment is municipal, governmental, or proprietary, in the promotion of which a city may apply its funds. The central and leading purpose, and the controlling one, is whether or not a municipality may use city funds to advertise the city's advantages.

It is not the province of the court to pass upon the policy of the city's using its funds for advertising purposes, or the wisdom of such policy. That is a legislative function. The court's concern is the legality of such a provision.

The judgment of the Court of Civil Appeals is affirmed.