OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



April 20, 2000

The Honorable Ken Armbrister
Chair, Committee on Criminal Justice
Texas State Senate
P.O. Box 12068, 1E.12
Austin, Texas 78711

Opinion No. JC-0212

Re:   Whether a home-rule city may expend tax funds to sponsor children's travel on out-of-state appearances   (RQ-0151-JC)

Dear Senator Armbrister:

You ask whether a home-rule city, absent express legislative authority, may spend public funds to join with a local school district in sponsoring travel of resident school children to Washington D.C. and New York where they represent the city and school district in public appearances. A home-rule city may adopt any ordinance not inconsistent with the constitution, the general law, or its city charter. The city does not need express legislative authority to spend public funds for a particular activity if it has authority under its charter to engage in that activity, but any expenditure must be for a public purpose and municipal purpose. The city may not donate public funds to a school district or expend funds other than for a municipal purpose.

The absence of legislation expressly addressing the expenditures you inquire about has raised concerns in some communities, in particular, the City of Port Arthur, as shown by the letter from the Port Arthur city attorney that you enclose. The city attorney's letter provides additional information about expenditures it has made in connection with the Port Arthur Independent School District (the "PAISD" or "School District"). Letter from Honorable Mark T. Sokolow, Port Arthur City Attorney, to Honorable David E. Bernsen, State Senator, District 4 (July 20, 1999) (on file with Opinion Committee) [hereinafter "Sokolow Letter"]. Attached to the letter is a resolution of the Port Arthur City Council, which states that the Lincoln High School Band had been chosen to represent the State of Texas at a celebration in Washington D.C. and that it would also represent the City of Port Arthur, and authorizing the city manager to spend $8,000 to assist the band in its travel expenses. City of Port Arthur Resolution No. 98-16 (Jan. 27, 1998). Another attachment shows that the city assisted the School District with the costs of sending a school performing group to out-of-state performances on three other occasions from 1997 through 1999. The letter states that "[t]he City viewed these programs as City and PAISD sponsored programs wherein the children represented the City and School District." Sokolow Letter.

You point out that there is statutory authority for some joint functions of cities and school districts. Local Government Code section 332.021 allows a municipality and an independent school district that are located in the same or adjacent counties to cooperate to establish "playgrounds,

recreation centers, athletic fields, swimming pools, and other park or recreational facilities located on property owned or acquired by either political subdivision." TEX. LOC. GOV'T CODE ANN. § 332.021 (Vernon 1999). However, no statute addresses jointly funding travel by school children to the public appearances you inquire about.

Home-rule cities, such as Port Arthur, derive their legislative authority directly from the Texas Constitution. TEX. CONST. art. XI, § 5; *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975); *Forwood v. City of Taylor*, 214 S.W.2d 282, 286 (Tex. 1948). They have full powers of self-government and authority to adopt charter provisions and ordinances not inconsistent with the constitution or general law and they look to legislation for limits on their power, rather than authorization. *Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490 (Tex. 1993); *City of Richardson v. Responsible Dog Owners of Texas*, 794 S.W.2d 17, 18 (Tex. 1990); *Forwood*, 214 S.W.2d at 286; Tex. Att'y Gen. Op. Nos. JC-0145 (1999) at 2; JC-0142 (1999) at 8. As a home-rule city, the City of Port Arthur may exercise legislative authority, but any ordinance or resolution it adopts must be consistent with the constitution and general law as well as with its city charter. *Lower Colorado River Authority*, 523 S.W.2d at 643-44; Tex. Att'y Gen. Op. No. H-936 (1977) at 1. Your question raises an issue as to whether the City of Port Arthur may, consistently with the Texas Constitution, spend public funds to sponsor school childrens' travel to out-of-state appearances.

The constitution places limits on a city's expenditure of public funds. Article VIII, section 3 of the Texas Constitution provides that "[t]axes shall be levied and collected by general laws and for public purposes only." Article III, section 52 of the constitution provides in part:

> (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever . . . .

TEX. CONST. art. III, § 52; *see also id.* art. III, § 51 (legislature may not grant or authorize the grant of public funds "to any individual, association or individuals, municipal or other corporations whatsoever"). Under this provision, city funds may be spent only to carry out a municipal purpose, although the fact that another entity also benefits from the expenditure does not invalidate it. *Barrington v. Cokinos*, 338 S.W.2d 133 (Tex. 1960); *see State ex rel. Grimes County Taxpayers Ass'n v. Texas Mun. Power Agency*, 565 S.W.2d 258 (Tex. Civ. App.–1978, writ dism'd). It is, however, well established that a city may not donate funds to an independent municipal corporation such as a school district. *See San Antonio Indep. Sch. Dist. v. Board of Trustees of the San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22, 25 (Tex. Civ. App.–San Antonio 1947, writ ref'd n.r.e.); *City of El Paso v. Carroll*, 108 S.W.2d 251, 257 (Tex. Civ. App.–El Paso 1937, writ ref'd) (City of El Paso could not lend or donate public funds to school district, which was a separate municipal corporation); Tex. Att'y Gen. Op. No. JM-1255 (1990) at 4 (city may not use revenue bond powers to assist school district to acquire a school building); Tex. Att'y Gen. LO-96-063, at 2 (violation of Texas

Constitution article III, sections 51 and 52 for city to donate public funds to school district to build schools within city boundaries; building schools is not a municipal purpose). The highest court of Kentucky has held that a city could not appropriate funds to a school district to supplement the salaries of its teachers. *Board of Educ. of City of Corbin v. City of Corbin*, 192 S.W.2d 951 (Ky. 1946). The Kentucky state constitution, like the Texas Constitution, prohibited any city from appropriating money to any corporation, association or individual. *Id.* at 952 (citing KY. CONST. § 79). While education is

> a municipal function or purpose; nevertheless, it is a function exclusively delegated to school districts as arms of the State government; and, even though the district's boundary is conterminous with the boundary of a city, it is, in legal contemplation, as distinct therefrom as a district whose boundary does not even border thereon. Two municipalities, for their respective purposes, may govern the inhabitants of a given territory; but the one may not interfere with the other in the exercise of specified authority; nor may it under Section 179 [of the Kentucky Constitution] reap a reward at the expense of the other.

*Id.*

The City of Port Arthur may not donate its public funds to a school district to assist it in carrying out school purposes, nor may it appropriate public funds to be used solely for school purposes. A city may spend its public funds only to carry out a municipal purpose, although the fact that there is an incidental benefit to a private person or another entity from the expenditure does not invalidate it. *Barrington*, 338 S.W.2d 133 (Tex. 1960); *see State ex rel. Grimes County Taxpayers Ass'n*, 565 S.W.2d at 258. This rule applies to all public funds of a city, whether derived from tax revenues or other sources. *See* TEX. CONST. art. III, § 52.

The city attorney's letter suggests that the school children represent the city as well as the school district, and that their representation serves a municipal purpose that justifies the expenditure of public funds. The decision in *Davis v. City of Taylor*, 67 S.W.2d 1033 (Tex. 1934), gives some support to the idea that representing the city in other states serves a public purpose and municipal purpose. In *Davis*, taxpayers sought to enjoin the expenditure of city funds for a board of city development, established by a charter provision to promote the growth, advertisement, development, improvement and increase of the taxable values of the city, on the ground that the expenditure was not for a public purpose or a municipal purpose. *Id.* at 1034-35. The Supreme Court stated that no exact definition of "public purpose" could be made, quoting as follows from McQuillen on Municipal Corporations: "What is a public purpose cannot be answered by any precise definition further than to state that if an object is beneficial to the inhabitants and directly connected with the local government it will be considered a public purpose." *Id.* at 1034 (quoting 6 MCQUILLEN ON MUNICIPAL CORPORATIONS § 2532, at 292 (2d ed. 1940)). The court held that the city's expenditure of funds to advertise its advantages served a public purpose and a municipal purpose, noting that

expenditures to send exhibits to state and national expositions had been upheld as made for a public purpose. *Id.* at 1035.

We believe that sending representatives of the city to other places to advertise the city's advantages might also serve a public purpose and a municipal purpose. Whether this purpose was served by Port Arthur's expenditures to send PAISD musical groups to out-of-state performances is a fact question, which cannot be answered in the opinion process. *See* Tex. Att'y Gen. Op. No. JC-0032 (1999) at 4. Moreover, expenditures of public funds for public purposes must be accompanied by contractual or other controls to insure that the public purpose is carried out. *Key v. Commissioners Court of Marion County*, 727 S.W.2d 667, 669 (Tex. App.–Texarkana, 1987, no writ). Whether appropriate controls accompanied Port Arthur's expenditures also involves questions of fact, which cannot be resolved in an attorney general opinion. *Id.* Port Arthur must also have authority under its charter or general law to engage in the activity it wishes to fund. *See generally* TEX. LOC. GOV'T CODE ANN. § 371.001 (Vernon 1999).

## S U M M A R Y

A home-rule city may adopt any ordinance not inconsistent with the constitution, general law, or its city charter and does not need express legislative authority to spend public funds for a particular activity if its charter authorizes it to engage in the activity. Any expenditure of city funds must be for a public purpose and municipal purpose. A city may not donate public funds to a school district or expend funds other than for a municipal purpose.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee