ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 30, 2003

The Honorable C.E. "Mike" Thomas, III
Howard County Attorney
P. O. Box 2096
Big Spring, Texas 79721

Opinion No. GA-0078

Re: Whether a commissioners court may contract for online legal research services for the general public and local attorneys with fees collected under section 323.023 of the Local Government Code (RQ-0006-GA)

Dear Mr. Thomas:

You ask whether the Commissioners Court of Howard County may contract for online legal research services for the general public and local attorneys, using filing fees collected for the county law library fund.[1] *See* TEX. LOC. GOV'T CODE ANN. § 323.023 (Vernon Supp. 2003) (authorizing filing fees for county law library fund).

The Howard County Bar Association submitted a proposal to the commissioners court to obtain an online legal research service, Westlaw, for the county law library. As we understand the terms of the proposal, the service provider would treat the entire community as a single customer, providing an open access account to the county law library for the general public and jail inmates, and individual accounts for the district judge, the district attorney, the county attorney, and each participating local attorney. The judge, the state attorneys, and the local attorneys would be able to access the databases from their respective offices. The charge for this service to Howard County would be a flat fee of $1900 to $2000 per month. Participating local attorneys would sign three-year contracts with the service provider and pay for services not included in the county's plan. Because the filing fees earmarked for the county law library fund average only $1840 per month, local private attorneys have agreed to pay the county the difference.

At the commissioners court's invitation, the district attorney submitted his alternative proposal to appoint a county law librarian, who could obtain online legal research services for the

---

[1]*See* Letter from Honorable C.E. "Mike" Thomas, III, Howard County Attorney, to Honorable Greg Abbott, Texas Attorney General at 1 (Dec. 9, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

library alone at a lower cost.[2] The district attorney objected to the bar association's plan because, he asserted, it would subsidize local attorneys. He observed that the service provider would not offer an open access account for the library without including accounts for the attorneys in the county. According to the district attorney, private attorneys currently pay $145 to $275 per month for online legal research services, but under the bar association's proposal, their costs would drop to an amount between $25 and $50 per month.

You specifically ask whether the local bar association's proposal would impermissibly subsidize the local attorneys by providing for their online research with the filing fees collected for the county library fund. While this office does not construe particular contracts in an attorney general opinion, we will address a public entity's authority to accept certain contractual terms when the question can be answered as a matter of law. *See* Tex. Att'y Gen. Op. No. JC-0068 (1999). The question we examine here is whether a county may use its law library fund to obtain online legal research services for the general public under a contract requiring the participation of private attorneys to their benefit.

A commissioners court's authority to act for the county derives only from the constitution and statutes, whether that power is express or necessarily implied. *See Guynes v. Galveston County,* 861 S.W.2d 861, 863 (Tex. 1993). Chapter 323, subchapter B of the Local Government Code authorizes a commissioners court to establish and maintain a county law library. TEX. LOC. GOV'T CODE ANN. §§ 323.021-.025 (Vernon 1999 & Supp. 2003). The commissioners court "shall annually appropriate an amount necessary for the proper maintenance and operation of the library." *Id.* § 323.021(b) (Vernon 1999). To defray a county law library's costs, the code authorizes a county to collect a civil case filing fee for deposit in a special county law library fund. *Id.* § 323.023(a)-(b) (Vernon Supp. 2003).

Section 323.023(b) of the Local Government Code allows the fund to be used only for county law library and judicial purposes, namely:

(1) establishing the law library after the entry of the order creating it;

(2) purchasing or leasing library materials, maintaining the library, or acquiring furniture, shelving, or equipment for the library; or

(3) purchasing or leasing library materials or acquiring library equipment, including computers, software, and subscriptions to obtain access to electronic research networks for use by judges in the county.

---

[2] *See* Letter from Honorable Hardy L. Wilkerson, District Attorney, 118th Judicial District, to Honorable Ben Lockhart, Howard County Judge (Nov. 22, 2002) (attached as exhibit to Request Letter) (on file with Opinion Committee).

*Id.* § 323.023(b)(1)-(3). Subsection (3) specifically authorizes using the fund for "subscriptions to obtain access to electronic research networks" for judges. Subsection (2) allows a county to obtain online research capabilities for the county law library under its authority to purchase or lease "library materials" and "equipment." As this office has observed, "Computer terminals, printers and programs designed to aid legal research are merely particular items of 'equipment' or types of 'library materials' within the meaning of the statute." Tex. Att'y Gen. Op. No. MW-399 (1981) at 2. Thus, while section 323.023(b) expressly authorizes using the fund to obtain online legal research services for judges and the county law library, it does not address whether the fund may be used to obtain such services for state and private attorneys.

This office has often interpreted chapter 323, subchapter B and its statutory precursors to mean that a county library fund may not be used for non-statutory purposes. *See, e.g.,* Tex. Att'y Gen. LO-93-043 (law library fund may not be used to maintain materials not owned by the county law library); Tex. Att'y Gen. Op. Nos. MW-9 (1979) (fund unavailable to provide library materials for judges' exclusive use, superseded by statute, TEX. LOC. GOV'T CODE ANN. § 323.023 (b)(3) (Vernon Supp. 2003)); H-1062 (1977) (fund may not be used for construction or renovation of a library building). The issue here is whether the county may obtain a service for the law library that also benefits state and private attorneys. Attorneys, as well as the general public, are entitled to use a county law library's services. *See Dallas County v. Sweitzer,* 881 S.W.2d 757, 767 (Tex. App.–Dallas 1994, writ denied) (purpose of county law library fee is to provide a library that "allows attorneys and the public access to the state's jurisprudence"). As we understand the bar association's proposal, the online services provider has conditioned the library's open access account on including accounts for public and private attorneys. While the benefit is different for attorneys than for other library patrons, the benefit appears to be an inextricable and incidental feature of the online legal services offered. Therefore, a court considering the question would likely conclude that the statutes permit a commissioners court to use the county law library fund to obtain online legal research services for the library and judges despite an incidental benefit to state and private attorneys. Subject to any constitutional constraints, it is within the commissioners court's discretion to decide whether to use the county law library fund in this manner. *See* TEX. LOC. GOV'T CODE ANN. § 323.023(c) (Vernon Supp. 2003).

The principal constitutional concern your question suggests is whether expenditures under the proposed contract would be an unconstitutional use of public funds for a private purpose. Under article III, section 52(a) of the Texas Constitution, a county may not "grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever."[3] That section and

---

[3]As pertinent here, the section provides:

> Sec. 52. (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

TEX. CONST. art. III, § 52(a). Article III, § 52(a) is but one of several constitutional prohibitions against using public

(continued...)

comparable constitutional provisions are intended "to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual, corporation, or purpose whatsoever." *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928).

However, spending public funds for a legitimate public purpose to obtain a clear public benefit is not an unconstitutional grant of public funds. *See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). Further, an expenditure to directly accomplish a legitimate public purpose is constitutional even though it incidentally benefits a private interest. *See, e.g., Brazos River Auth. v. Carr*, 405 S.W.2d 689, 693 (Tex. 1966) (exchange of state bonds for corporate bonds to directly accomplish the purposes for which the authority was created was "not rendered invalid by the fact that the method of handling the transaction is beneficial to the corporation and its stockholders"); *Barrington v. Cokinos*, 338 S.W.2d 133, 139 (relocating railroad tracks to eliminate railroad crossings did not violate prohibition against donations to corporations in TEX. CONST. art. XI, § 3); *Graves v. Morales*, 923 S.W.2d 754, 757 (Tex. App.–Austin 1996, writ denied) (state payment of employee's occupation tax is not an unconstitutional transfer of funds for private purpose); *Young v. City of Houston*, 756 S.W.2d 813, 814 (Tex. App.–Houston [1st Dist.] 1988, writ denied) (city's enforcement of private restrictive covenants serves a public purpose despite private benefit); Tex. Att'y Gen. Op. No. H-403 (1974) (state agency may construct a building on leased land even though building would become the property of the landowner on lease termination).

Whether a legislative act serves a public purpose is, in the first instance, a determination the appropriate legislative body must make. *See Young*, 756 S.W.2d at 814 (determining public purpose of expenditure is primarily legislative function); *City of Coleman v. Rhone*, 222 S.W.2d 646, 649 (Tex. Civ. App.–Eastland 1949, writ ref'd) (determining public purpose of ordinance is, in first instance, for municipal governing body). The Texas Supreme Court has stated a three-part test to determine if a statute accomplishes a public purpose:

> Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Tex. Mun. League*, 74 S.W.3d at 383. This office has identified similar principles for determining if a particular expenditure serves a public purpose: "In making an expenditure of county funds that benefits a private person or entity, . . . a commissioners court will avoid violating article III, section 52 if it (i) determines in good faith that the expenditure serves a public purpose and (ii) places

---

[3](...continued)
resources for private purposes. *See, e.g.*, TEX. CONST. art. III, § 50 (loan of state credit); *id.* art. III, § 51 (legislative grants); *id.* art. VIII, § 3 (taxes for public purpose); *id.* art. XI, § 3 (subscriptions or donations to corporations).

sufficient controls on the transaction, contractual or otherwise, to ensure that the public purpose is carried out." Tex. Att'y Gen. Op. No. JC-0582 (2002); *see also* Tex. Att'y Gen. Op. No. GA-0033 (2003) at 8 (applying similar principles to article III, section 51 of the Texas Constitution).

That the legislature has authorized counties to obtain online legal research capabilities for their law libraries supports the conclusion that obtaining such services as the local bar association proposes would directly serve a legitimate public purpose. *See Davis v. City of Lubbock*, 326 S.W.2d 699, 709 (Tex. 1959) (legislative determination of public purpose is "highly persuasive"). Moreover, online legal research services would be one means for the county to provide for an accused's constitutional right of access to the courts. *See McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998) (prisoner has a constitutional right of access to courts through adequate law libraries or assistance from legally trained personnel). We believe that the commissioners court could reasonably determine that the contract for internet legal research services as the local bar association proposes would serve a predominately public purpose and convey a public benefit. Further, the commissioners court could determine that the proposed contract provides sufficient control to ensure that the public purpose is carried out. *See Key v. Commissioners Court of Marion County*, 727 S.W.2d 667, 669 (Tex. App.–Texarkana 1987, no writ) (contractual terms may suffice to provide the requisite control). Consequently, article III, section 52(a) does not preclude a county from obtaining online legal research services for its law library under a contract that incidentally benefits state and private attorneys.

We conclude that neither chapter 323, subchapter B of the Local Government Code nor article III, section 52(a) of the Texas Constitution prohibits an expenditure according to the local bar association's proposal as described. Of course, it is for the commissioners court to decide in the first instance whether any county expenditure is the appropriate means to serve a legitimate public purpose and is subject to adequate control.

## S U M M A R Y

A commissioners court may use fees collected under section 323.023 of the Texas Local Government Code to provide online legal research services for the general public, judges, and attorneys, and incidental benefit to private attorneys would not render the expenditure unconstitutional under article III, section 52(a) of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee